IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROBERT C. ROCKWELL, Personal Representative for the Estate of Richard Gill; RODNEY ANSTETT, Personal Representative, Estate of Rodger R. Anstett; RUBEN HERNANDEZ on behalf of the Estate of Jose Angel Hernandez; KEITH CHRISTIANSON; FRANKLIN HARRIS; MARY HUNTER, Personal Representative of the Estate of Steven Hunter; BRIAN MCMANUS; JAIME MORALES, Personal Representative, Estate of Jose Morales; MARK NYLUND; BEVERLEY TANKERSLY; JAVIER VAGE; and TYRONE WALTON | 05-CV-694-BR<br><br>OPINION AND ORDER |

      Plaintiffs,

v.

STATE OF OREGON; MAX
WILLIAMS, Director of Oregon
Department of Corrections;
DAVID S. COOK, M.D,; STEVE

1 - OPINION AND ORDER

SHELTON, M.D., Medical
Director, Oregon Department
of Corrections; SCOTT TAYLOR;
MITCH MORROW; CATHERINE M.
KNOX; STAN CZERNIAK; TED
RANDALL; PATRICIA LILENTHAL;
WILLIAM CAHAL; JOHN M. VARGO,
D.O.; GEORGE G. DEGNER, M.D.;
ROBERT INGLE, M.D.; FIAOD EL-
EBIARY, M.D.; JERALD B. FELDER;
JAMES HARTWIG; IAN DUNCAN,
M.D.; JOHN STOUNE, M.D.;
GARTH GULICK, M.D.; MICHAEL
D. BUCK, M.D.; LARRY HERRING;
LANNY RYALS; DEBORAH REYNOLDS;
and JOHN DOES 1-100,

      Defendants.


**DAVID F. SUGERMAN**
Paul & Sugerman, PC
520 S.W. Sixth Avenue
Suite 920
Portland, OR 97204
(503) 224-6602

**MICHELLE R. BURROWS**
618 N.W. Glisan, Suite 203
Portland, OR  97209
(503) 241-1955

    Attorneys for Plaintiffs

**HARDY MYERS**
Attorney General
**LYNNE D. RENNICK**
Assistant Attorney General
433 West Tenth Avenue, Suite 102
Eugene, OR  97401
(541) 345-7200

   Attorneys for Defendants

2 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Unenumerated 12(b) Motion to Dismiss (#91) the claims of Plaintiffs Franklin Harris, Beverley Tankersley, and Javier Vage. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

Plaintiff Franklin Harris was an inmate at the Oregon State Penitentiary (OSP) from May 1985 through June 1999, from November 2004 through June 2005, and from August 2005 to the present. Harris was an inmate at the Snake River Correctional Institution (SRCI) from June 1999 to November 2004 and from June 2005 through August 2005.

Plaintiff Beverley Tankersley was an inmate at the Oregon Women's Correctional Center (OWCC) from May 1997 through September 2000. Tankersley was an inmate at the Eastern Oregon Correctional Institution (EOCI) from September 2000 to April 2002. Finally, Tankersley has been an inmate at the Coffee Creek Correctional Facility (CCCF) from April 2002 through the present.

Plaintiff Javier Vage was an inmate at SRCI from September 1997 through August 1999 and from February 2000 through August 2005. Vage was an inmate at OSP from August 1999 through February 2000 and has been an inmate there since August 2005.

Plaintiffs bring this action against Defendants for

3 - OPINION AND ORDER

allegedly violating their rights under the Eighth Amendment to be free from cruel and unusual punishment pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101.

## STANDARDS

In the Ninth Circuit, failure to exhaust administrative remedies "should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment."  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  To decide a motion to dismiss for failure to exhaust administrative remedies, however, the court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  Unlike summary judgment, dismissal for failure to exhaust administrative remedies is not a decision on the merits. *Id.*  "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  *Id.* at 1120.

## DISCUSSION

Defendants move to dismiss the claims of Harris, Tankersley, and Vage on the ground that they failed to exhaust their administrative remedies before bringing this action.

4 - OPINION AND ORDER

**I.   Prison Litigation Reform Act's Exhaustion Requirement**

The Prison Litigation Reform Act (PLRA) of 1995 amended 42 U.S.C. § 1997e to provide "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandated regardless of the relief offered through the prison-administrative procedures.  *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 1825 (2001).  The exhaustion requirement applies to all inmate lawsuits relating to prison life whether they involve general circumstances or particular episodes and whether the inmates allege excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983, 988-89 (2002).  In addition, the Supreme Court held in *Booth* that prisoners are obligated to navigate the prison's administrative-review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."  532 U.S. at 739-41.  Accordingly, the Ninth Circuit has held "plaintiffs must pursue a remedy through a prison grievance process as long as *some* action can be ordered in response to the complaint."  *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005)(emphasis in original).  Even if the relief the prisoner receives is nothing more than "corrective action taken in response to an inmate's grievance [that] . . .

5 - OPINION AND ORDER

improve[s] prison administration and satisf[ies] the inmate," it is sufficient relief for an inmate to continue with the administrative process. *Id*. at 936 (quoting *Porter*, 534 U.S. at 525). Nevertheless, "*Booth* does not require exhaustion when *no* pertinent relief can be obtained through the internal process." *Id*. at 935 (emphasis in original)(citing *Booth*, 532 U.S. at 736).

Exhaustion of administrative remedies under 42 U.S.C. § 1997e(e) is an affirmative defense. *Wyatt*, 280 F.3d at 1245. "[D]efendants have the burden of raising and proving the absence of exhaustion." *Id.* at 1120.

> Relevant to evidence in so demonstrating would include . . . regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case.

*Brown*, 422 F.3d at 937. As noted, if the court concludes an inmate has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt*, 315 F.3d at 1119-20.

**II. Claims that Must Be Exhausted**

Plaintiffs assert the exhaustion requirement of § 1997e applies only to Plaintiffs' Eighth Amendment claim under § 1983. The plain language of the PLRA, however, requires inmates to exhaust the grievance procedures "with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law."

6 - OPINION AND ORDER

The exhaustion requirement of the PLRA, therefore, applies equally to Plaintiffs' ADA claims.  *See, e.g., Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005)(inmate required to exhaust his ADA claim before filing an action in federal court). Accordingly, the Court's exhaustion analysis applies to Plaintiffs' claims under both § 1983 and the ADA.

### III. Oregon Department of Corrections Grievance Procedure

Inmates at ODOC facilities are required to communicate with "line staff" verbally or in writing to resolve a dispute before filing a grievance.  If communication with line staff does not resolve an inmate's issue, the inmate may then file a grievance form within 30 days of the incident or conflict.  Inmates must attach copies of their previous communications with line staff to their grievance forms to demonstrate that they attempted to resolve the conflict informally before filing their grievance. If an inmate is not satisfied with the response to his or her grievance, the inmate may file an appeal to the functional unit manager by completing a grievance appeal form and filing it with the grievance coordinator within 14 days from the time the response was sent to the inmate.  The grievance coordinator then assigns the grievance a number and records it in the grievance log.

An inmate may appeal the functional unit manager's decision by submitting to the assistant director an appeal form, the

original grievance, attachments, and staff responses. The grievance coordinator then date-stamps and logs in the appeal form. The decision of the assistant director is final and is not subject to further review.

The Oregon Department of Corrections (ODOC) informs inmates of the grievance procedure at their mandatory Admission and Orientation class held when inmates first arrive at a facility. In addition, information about the procedure is contained in the inmate handbook. Inmates may obtain grievance forms and instructions from any housing unit officer.

## IV. Plaintiff Franklin Harris

Defendants assert Harris's claims must be dismissed because Harris failed to exhaust his administrative remedies.

It is undisputed that Harris failed to file a grievance before filing this action as one of the plaintiffs on May 16, 2005. In their Supplemental Response to Defendants' Motion, Plaintiffs assert Harris suffers from serious cognitive defects, and, therefore, he prepared his grievance with the assistance of counsel. Harris submitted his grievance on January 18, 2007. Although Plaintiffs contend ODOC confirmed receipt of the grievance on February 5, 2007, Plaintiffs failed to include a copy of the January 18, 2007, grievance or ODOC's confirmation of receipt. On this record, it appears ODOC has not yet taken any action on Harris's grievance. Although the failure of prison

8 - OPINION AND ORDER

officials to respond to a grievance "may demonstrate that no administrative process is in fact available," the Court concludes on this record that Harris has not established either that he has exhausted his administrative remedies or that Defendants have delayed responding to his grievance for a length of time that indicates the administrative process is unavailable to him.

Accordingly, the Court grants Defendants' Motion to Dismiss with respect to Harris's claims.

**V.    Plaintiff Beverley Tankersley**

Defendants assert Tankersley's claims must be dismissed because Tankersley failed to exhaust her administrative remedies. To support their assertion, Defendants offer the Affidavit of Parklyn Maine, the grievance coordinator who was legally obligated to log in Tankersley's grievance forms at EOCI; the Affidavit of Carissa Casper, the grievance coordinator who was legally obligated to log in Tankersley's grievance forms at CCCF; copies of the ODOC Administrative Rules governing the inmate-grievance system; and copies of Tankersley's various grievances and ODOC's responses.

According to these materials, Tankersley submitted a grievance form on May 21, 2002, in which she requested testing and treatment for Hepatitis C (HCV). On June 13, 2002, Mary Raines, R.N., the Health Services Nurse Manager, responded to Tankersley's grievance, explained to Tankersley that health-

9 - OPINION AND ORDER

services staff monitored Tankersley's HCV on a regular basis, and advised "no further treatment [was] indicated" at that point. On June 25, 2002, Tankersley appealed the decision of Nurse Raines to the Health Services Administrator. On August 12, 2002, Joseph Richter, Health Services Administrator, responded to Tankersley's appeal. Richter explained to Tankersley that medical treatment for HCV is only partially effective and has significant side effects. In addition, Richter advised Tankersley that individuals with progressive liver damage due to HCV were being considered by ODOC for treatment, but Tankersley's liver function tests were "in the normal range and had been for quite some time." Richter noted Health Services was monitoring Tankersley's HCV and that proper diet and exercise were the best long-term treatments at Tankersley's stage of infection. Accordingly, Richter denied Tankersley's request for further treatment.

Casper testifies she made "a thorough search of [the ODOC] records which date back to 2002 and [found]" Tankersley did not file an appeal from Richter's decision. Defendants, therefore, assert Tankersley did not exhaust the grievance procedure.

In response, Tankersley testifies in her Affidavit that she is aware of the three-step administrative process and that she filed an appeal of Richter's denial on August 18, 2002. According to Tankersley, however, she did not receive a response to her appeal nor receive her paperwork back from ODOC.

10 - OPINION AND ORDER

Tankersley also testifies she is "aware from discussions with other inmates and staff here that as soon as the class action [*Anstett*] was certified in approximately 2002 or 2003 ODOC has refused to process grievances relating to HCV infection."

### A. Tankersley's Alleged Appeal to the Assistant Director

Tankersley's assertion that she filed an appeal of Richter's decision is undermined by the fact that inmates may file a separate grievance if they do not receive any response to a grievance or appeal. Indeed, Tankersley filed a grievance on June 10, 2002, in which she complained that her May 21, 2002, grievance regarding failure to receive treatment for HCV had not yet been addressed. There is not any evidence, however, that Tankersley filed a grievance related to the alleged failure of the assistant director to respond to her appeal of Richter's decision.

Again, the failure of prison officials to respond to a grievance "may demonstrate that no administrative process is in fact available," *Brown*, 422 F.3d at 943 n.18,. Without some supporting evidence in the record to establish that an administrative remedy was unavailable to her, Tankersley's conclusory allegations that she filed an appeal and did not receive a response to such an appeal are insufficient. *See, e.g., Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005)(inmate's statement that he exhausted his

11 - OPINION AND ORDER

administrative remedies was not sufficient under the PLRA to establish that the inmate had exhausted his administrative remedies when he did not attach any written documentation pertaining to the administrative disposition of his complaints).

On this record, therefore, the Court concludes Defendants have produced sufficient evidence to establish that Tankersley did not appeal Richter's decision. *See, e.g., Hallford v. Cal. Dep't of Corr.*, No. CIV S-05-0573 FCD DAD P, 2006 WL 3782701, at *3-4 (E.D. Cal. Dec. 21, 2006)(the defendant sufficiently established the plaintiff had not exhausted his administrative remedies and granted the defendants' unenumerated Rule 12(b) motion to dismiss).

### B. Tankersley's Allegations that ODOC Refused to Process Her Grievances

Tankersley also alleges ODOC refused to process her grievances related to treatment for HCV beginning in 2002 or 2003. This assertion, however, is belied by the fact that Tankersley filed a grievance on May 21, 2002; received a substantive response on June 13, 2002; filed an appeal on June 25, 2002; and received a substantive response to her appeal on August 12, 2002. Thus, there is not any evidence that ODOC refused to process Tankersley's grievances or appeals in 2002 or 2003.

### C. Tankersley's Latest Grievance

In Plaintiffs' Supplemental Response to Defendants'

12 - OPINION AND ORDER

Motion, Plaintiffs assert Tankersley submitted a new grievance regarding treatment for HCV at some point, but ODOC responded "they were not going to continue to process her grievance." Although the record does not contain Tankersley's new grievance, it does include ODOC's response on January 29, 2007, in which Casper informed Tankersley that she was returning Tankersley's grievance for noncompliance with ODOC regulations.  In particular, the grievance did not identify the date on which Tankersley alleges she was refused treatment or testing or the person who refused her request for treatment in the previous 30 days.  Thus, ODOC did not deny Tankersley's grievance for substantive reasons, but instead refused to process the grievance because the grievance itself was not sufficiently detailed to enable Casper to make a decision.  It follows that ODOC's refusal to process Tankersley's latest grievance was due to Tankersley's failure to complete her grievance adequately rather than to a general policy of not processing HCV grievances.

Accordingly, the Court concludes on this record that Tankersley has not yet exhausted her administrative remedies nor established that exhaustion of those remedies would be futile. The Court, therefore, grants Defendants' Motion to Dismiss with respect to Tankersley's claims.

## VI.  Plaintiff Javier Vage

Defendants assert Vage's claims must be dismissed because

13 - OPINION AND ORDER

Vage failed to exhaust his administrative remedies.  To support their assertion, Defendants offer the Affidavit of Theresa Hicks, the grievance coordinator who was legally obligated to log in Vage's grievance forms at SRCI, copies of the ODOC Administrative Rules governing the inmate-grievance system, and copies of Vage's various grievances and ODOC's responses.

These materials establish Vage filed three grievances that were processed, six that were returned to Vage because they did not comply with the rules, and one grievance that Hicks rejected because Vage was involved in the *Anstett* class-action litigation.

On March 19, 2005, Vage submitted a grievance in which he complained that he was not receiving adequate treatment for his HCV.  On April 29, 2005, Health Services Manager S. Hodge, R.N., responded to Vage's grievance and noted Vage had not completed any program for alcohol and/or drug dependence, which is a requirement to qualify for a liver biopsy and for different HCV treatment.  Accordingly, Hodge denied Vage's grievance.

On May 16, 2005, Vage appealed Hodge's decision and requested a liver biopsy and numerous other tests and medications for HCV.  On June 7, 2005, Steve Shelton, M.D, Medical Director, responded to Vage's appeal and noted Vage's request was denied on the ground that he had "not addressed the risk behavior of alcohol or illicit drug use, which is part of the criteria to be met, to get the liver biopsy done."  Dr. Shelton noted Vage had

14 - OPINION AND ORDER

received numerous tests related to HCV on April 7, 2005, and that he would be reconsidered for a liver biopsy and treatment after he completed alcohol and drug programs.

Hicks testifies she did not find any evidence after a thorough search of her records that Vage appealed the decision of Dr. Shelton to the assistant director. Accordingly, Defendants contend Vage has not exhausted his administrative remedies.

Plaintiffs assert Vage attempted to file a grievance regarding his HCV treatment, but he was prohibited from doing so by ODOC. To support this assertion, Plaintiffs attach a grievance that Vage submitted on January 8, 2004, in which he sought treatment for HCV. On January 14, 2004, Hicks denied Vage's grievance on the ground that HCV "care and treatment is currently in a class action suit [and ODOC] will not process grievances on claims or issues that the inmate is pursuing in pending litigation in the courts."

In their Reply, Defendants note Theresa Hicks only refused to process grievances involving HCV medical-treatment issues from July through November 2004. To support their assertion, Defendants cite to an affidavit by Hicks filed in *Walker v. State*, No. 04-980-AS, in which Defendants allege Hicks testified in November 2004 that defense counsel directed her to process these grievances, and, as a result, she has processed those kinds of grievances ever since. Defendants, however, did not submit

15 - OPINION AND ORDER

the Hicks affidavit as evidence in this case, the document was "conventionally filed" in *Walker* so it cannot be accessed through the Court's electronic-docketing system, and the Court file has been sent to the Ninth Circuit pending appeal of the *Walker* matter. The Hicks affidavit referenced, therefore, is not part of this record.

Nevertheless, the record establishes Vage filed a grievance as to his HCV treatment issues in 2005 as noted. Thus, Plaintiffs' assertion that Vage could not file grievances as to his HCV treatment issues is refuted by the filing of his 2005 grievance.

Because the record does not reflect Vage appealed the denial of his 2005 appeal to the assistant director, the Court concludes Defendants have established that Vage has not exhausted his administrative remedies. Accordingly, the Court grants Defendants' Motion to Dismiss with respect to Vage's claims.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Unenumerated Rule 12(b) Motion to Dismiss (#91) and **dismisses** the claims of

Plaintiffs Harris, Tankersley, and Vage **without prejudice**.

IT IS SO ORDERED.

DATED this 3rd day of April, 2007.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER