IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT C. ROCKWELL, Personal              05-CV-694-BR
Representative for the Estate
of Richard Gill; RODNEY                   OPINION AND ORDER
ANSTETT, Personal
Representative, Estate
of Rodger R. Anstett; RUBEN
HERNANDEZ on behalf of the
Estate of Jose Angel
Hernandez; KEITH
CHRISTIANSON; FRANKLIN
HARRIS; MARY HUNTER, Personal
Representative of the Estate
of Steven Hunter; BRIAN
MCMANUS; JAIME MORALES,
Personal Representative,
Estate of Jose Morales; MARK
NYLUND; BEVERLEY TANKERSLY;
JAVIER VAGE; and TYRONE WALTON,

        Plaintiffs,

v.

STATE OF OREGON; MAX
WILLIAMS, Director of Oregon
Department of Corrections;
DAVID S. COOK, M.D,; STEVE
SHELTON, M.D., Medical
Director, Oregon Department

1 - OPINION AND ORDER

of Corrections; SCOTT TAYLOR;
MITCH MORROW; CATHERINE M.
KNOX; STAN CZERNIAK; TED
RANDALL; PATRICIA LILENTHAL;
WILLIAM CAHAL; JOHN M. VARGO,
D.O.; GEORGE G. DEGNER, M.D.;
ROBERT INGLE, M.D.; FIAOD EL-
EBIARY, M.D.; JERALD B. FELDER;
JAMES HARTWIG; STEPHEN HENDRICKS,
Personal Representative of
the Estate of Ian Duncan,
M.D.; JOHN STOUNE, M.D.;
GARTH GULICK, M.D.; MICHAEL
D. BUCK, M.D.; LARRY HERRING;
LANNY RYALS; DEBORAH REYNOLDS;
and JOHN DOES 1-100,

                    Defendants.


DAVID F. SUGERMAN
Paul & Sugerman, PC
520 S.W. Sixth Avenue
Suite 920
Portland, OR 97204
(503) 224-6602

MICHELLE R. BURROWS
618 N.W. Glisan, Suite 203
Portland, OR  97209
(503) 241-1955

            Attorneys for Plaintiffs

HARDY MYERS
Attorney General
RODNEY K. NORTON
KAREN O'KASEY
LEONARD W. WILLIAMSON
LYNNE D. RENNICK
Assistant Attorneys General
433 West Tenth Avenue, Suite 102
Eugene, OR  97401
(541) 345-7200

            Attorneys for Defendants


2 - OPINION AND ORDER

BROWN, Judge.

This matter comes before the Court on Defendant State of Oregon's Motion for Summary Judgment (#216).  For the reasons that follow, the Court **GRANTS** Defendant's Motion as to the claims of Plaintiffs Ruben Hernandez on behalf of the Estate of Jose Angel Hernandez and Tyrone Walton pursuant to the Americans with Disabilities Act (ADA).

The State also sought summary judgment as to the ADA claims of Plaintiff Robert C. Rockwell, Personal Representative for the Estate of Richard Gill.  Although the parties previously reached a settlement as to those claims, the Court was advised the settlement "fell through."  Plaintiffs, however, assert in their Response that the settlement was reconfirmed, and the State agrees in its Reply that the only remaining Plaintiffs with claims under the ADA are Hernandez and Walton.  The Court, therefore, **DENIES as moot** the State's Motion against Rockwell.

<u>BACKGROUND</u>

Jose Angel Hernandez and Tyrone Walton are or were current and former inmates of various Oregon prisons administered by the Oregon Department of Corrections (ODOC).  Plaintiff Ruben Hernandez is the duly appointed representative of the Estate of Jose Angel Hernandez.  Jose Angel Hernandez was incarcerated at various ODOC institutions.  During his incarceration, he suffered

3 - OPINION AND ORDER

from the Hepatitis C virus (HCV) and died as a result of complications on September 5, 2005.

Plaintiff Tyrone Walton has been incarcerated at SCRI since 1988.  Walton was diagnosed with HCV in July 2000.

Defendants are the State of Oregon and various ODOC officials and doctors.

On April 6, 2007, Plaintiffs filed a Third Amended Complaint in which they allege Defendants violated Plaintiffs' Eighth Amendment rights to be free from cruel and unusual punishment and their rights under Title II of the ADA, 42 U.S.C. § 12132, by enacting policies that resulted in the delay or denial of Plaintiffs' treatment for HCV.

On June 25, 2007, Defendant State of Oregon filed a Motion for Summary Judgment as to the ADA claims brought by the Estates of Plaintiffs Gill and Hernandez and Plaintiff Walton on the basis that these Plaintiffs do not have a viable claim under Title II of the ADA because Title II does not provide a cause of action for complaints about the inadequacy of medical care provided to prisoners.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving

4 - OPINION AND ORDER

party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party. *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

**I.   Title II of the ADA**

Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  To establish the State violated any rights Plaintiffs may have pursuant to Title II of the ADA, Plaintiffs must show:

> (1)  [they are] "qualified individual[s] with a disability";
>
> (2)  [they were] either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or [were] otherwise discriminated against by the public entity; and
>
> (3)  such exclusion, denial of benefits, or discrimination was by reason of [their] disability.

*Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)(citing 42 U.S.C. § 12132 and *Does 1-5 v.*

6 - OPINION AND ORDER

*Chandler*, 83 F.3d 1150, 1154-55 (9th Cir. 1996)).

For purposes of its Motion, the State assumes, but does not concede, Plaintiffs either have or have had a disability under the ADA.

## II.  Analysis

In their Third Amended Complaint, Plaintiffs Hernandez and Walton contend the State violated Title II of the ADA when, pursuant to ODOC policy, it

> delay[ed] and den[ied] essential medical care in one or more of the following particulars:
>
> A.    Failing to timely examine plaintiff[s];
>
> B.    Failing to order a biopsy;
>
> C.    Failing to refer plaintiff[s] to a gastroenterologist;
>
> D.    Failing to properly address pain management issues;
>
> E.    Failing to timely provide information on lab results;
>
> F.    Failing to timely obtain genotyping, viral loads and liver function tests;
>
> G.    Failing to rely on proper lab results;
>
> H.    Requiring drug and alcohol treatment as a condition of medical care when it was unavailable;
>
> I.    Refusing to accept the drug and alcohol treatment obtained by plaintiff[s] as qualification for treatment;
>
> J.    Failing to provide anti-viral medications;
>
> K.    Failing to properly manage the use of

anti-viral medication; and

L.    Failing to refer plaintiff[s] to a transplant
      surgeon for work-up for liver transplant.

Third Am. Compl. ¶¶ 63, 104.

Plaintiffs assert they "do not argue the quality of care violates the ADA.  Rather, the question is whether the State violated the ADA by failing to treat [Plaintiffs] at all."

As noted, Defendant State of Oregon asserts Plaintiffs Hernandez and Walton do not have a viable claim under the ADA because their claims arise from the alleged inadequacy of medical care provided to Plaintiffs and the ADA does not provide a cause of action for those kinds of claims.

To support its argument, the State cites *Rosado v. Alameida*, *Galvin v. Cook*, and *Becker v. Armenakis*.  In *Rosado*, the plaintiff, an inmate, was diagnosed with advanced stage cirrhosis and HCV.  No. Civ. 03CV1110J (LSP), 2005 WL 892120, at *1 (S.D. Cal. Feb. 8, 2005).  The plaintiff brought a claim against the California Department of Corrections (CDC) under Title II of the ADA on the ground that it "fail[ed] to provide [the plaintiff] with the medication, medical procedures, medical diagnosis, . . . and other accommodations made necessary by his disability . . . [and] fail[ed] to have [the plaintiff] evaluated for a liver transplant [and] fail[ed] to place him on the liver transplant list."  *Id*.  The plaintiff further asserted the CDC had a policy of denying organ transplants to prisoners, which was equivalent

8 - OPINION AND ORDER

to "discrimination against prisoners who are more sick in favor
of those whose medical needs are not as significant." *Id.*, at
*2.  The court dismissed the plaintiff's ADA claim on the ground
that the ADA "does not create a federal cause of action for
prisoners challenging the medical treatment provided for their
underlying disabilities." *Id.* (citing *Grzan v. Charter Hosp. of
N.W. Ind.*, 104 F.3d 116, 121-22 (7th Cir. 1997)).  The court
noted

> careful wording does not transform Plaintiff's
> complaint about the quality and extent of his
> access to medical care into a disability
> discrimination claim.  The benefits and services
> Plaintiff wishes to receive are *for* his
> disability; it is illogical to say that he is
> being denied medical services because he has a
> disability.  Moreover, Plaintiff is not arguing
> that those who are less sick received the same
> services he was denied . . . .  As such, the Court
> [concludes] . . . Plaintiff's allegations are
> inappropriately framed under the ADA.

*Id.*, at *3 (emphasis in original).

In *Galvin*, the plaintiff, an inmate, brought an action
against several employees of the Oregon Department of Corrections
pursuant to 42 U.S.C. § 1983; the ADA; and the Rehabilitation
Action, 29 U.S.C. § 794, *et seq.*  No. CV 00-29-ST, 2000 WL
1520231, at *1 (D. Or. Oct. 3, 2000).  The plaintiff alleged the
defendants denied him medication; "battle[d]" with him about
proper dosages of his medication; refused to treat him for
headaches, muscle spasms, cramps, and seizures; "placed him in a
treatment program which did not adequately treat any serious

9 - OPINION AND ORDER

mental or drug related problem"; and failed to control his

diabetes.  The court granted the defendants' motion for summary

judgment with respect to the plaintiffs' ADA claim on the basis

that

> [t]he ADA and Rehabilitation Act afford disabled
> persons legal rights regarding access to programs
> and activities enjoyed by all, but do not provide
> them with a general federal cause of action for
> challenging the medical treatment of their
> underlying disabilities. . . .  Here, plaintiff
> has failed to allege that the State defendants
> denied him the benefits of any services, programs,
> or activities provides for other non-disabled
> inmates. . . .  [The plaintiff's] claims concern
> the medical treatment provided to plaintiff and
> . . . are not the types of claims that the ADA
> . . . [was] intended to cover.  Instead they
> concern plaintiff's Eighth Amendment right against
> cruel and unusual punishment.

*Id.*, at *7 (citations omitted).

In *Becker*, the plaintiff, a former inmate, brought an action

against several ODOC employees alleging, among other things, the

defendants violated Title II of the ADA because they had a

"policy, practice, and procedure" to avoid providing surgical

services to maximum-security inmates unless the inmate's medical

condition was life-threatening and the defendants applied the

policy to delay surgery on the plaintiff's left arm.  No. CV 97-

1650-HA at 5 (D. Or. Mar. 21, 2002).  The court granted the

defendants' motion for summary judgment as to the plaintiff's ADA

claim on the ground that

> [t]he ADA . . . give[s] disabled prisoners legal
> rights regarding access to the programs and

> activities enjoyed by all inmates, but do[es] not
> provide them with a general federal cause of
> action to challenge the medical treatment of their
> underlying disabilities.  The ADA does not create
> a remedy for medical malpractice.
>
>                        * * *
>
> [The plaintiff] has not established that
> defendants denied him the benefit of surgical
> services provided for other non-disabled
> prisoners, or that they discriminated against him
> by delaying surgery . . . based on his amputee
> status.  Plaintiff's claims concern the adequacy
> of the medical treatment provided to him by prison
> officials, and are not the types of claims that
> the ADA . . . [was] intended to address; instead,
> plaintiff's claims concern his Eighth Amendment
> right to be free from cruel and unusual
> punishment.

*Id.* at 21-22 (citations and quotation omitted).

Here as in *Rosado*, *Galvin*, and *Becker*, Plaintiffs' claims arise from the alleged inadequacy of medical treatment they received in various ODOC institutions and are not the types of claims the ADA was intended to address.  Similarly, Plaintiffs' "careful wording" in their Third Amended Complaint and their other pleadings in this action "does not transform [their] complaint about the quality and extent of [their] access to medical care into a disability discrimination claim."  *See Rosado*, 2005 WL 892120, at *3.  Indeed, "the benefits and services Plaintiff[s] wish[] to receive are *for* [their] disability; it is illogical to say that [they are] being denied medical services because [they have] a disability."  *Id.* (emphasis in original).  Finally, the "otherwise qualified" term

11 - OPINION AND ORDER

of the ADA refers to individuals who are qualified for the
service at issue in spite of their disabilities rather than
because of their disabilities. *United States v. Univ. Hosp.,
State Univ. of N.Y. at Stony Brook*, 729 F.2d 144, 156 (2d Cir.
1984).

The Court, therefore, concludes Plaintiffs have not
established a viable claim under Title II of the ADA.
Accordingly, the Court grants Defendant State of Oregon's Motion
for Summary Judgment as to the ADA claims of Hernandez and
Walton.

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendant State of
Oregon's Motion for Summary Judgment (#216) as to the ADA claims
of Plaintiffs Ruben Hernandez on behalf of the Estate of Jose
Angel Hernandez and Tyrone Walton.  The Court **DENIES as moot**
Defendant State of Oregon's Motion for Summary Judgment (#216) as
to the ADA claims of Plaintiff Rockwell, Personal Representative
of the Estate of Richard Gill because the parties have reached a

settlement that encompasses the Gill ADA claims.

     IT IS SO ORDERED.

     DATED this 24th day of September, 2007.


                    /s/ Anna J. Brown

                    _____

                    ANNA J. BROWN
                    United States District Judge

13 - OPINION AND ORDER